Terrence S. Jones, ISB No. 5811
QUANE JONES MCCOLL, PLLC
US Bank Plaza
101 South Capitol Boulevard
Suite 1601
P.O. Box 1576
Boise, Idaho 83701
Telephone (208) 780-3939
Facsimile (208) 780-3930
tsj@quanlaw.com

Attorneys for Plaintiff American
Alternative Insurance Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, a Delaware corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>BIG WOOD CANAL COMPANY, an Idaho corporation; CARL PENDLETON, individually; MIKE FAULKNER, individually; GREG LIERMAN, individually; ROBIN LEZAMIZ, individually; ALTON HUYSER, individually; RODDY L. ADAMS, individually; JACK LOPER, individually; RYAN TELFORD, individually; HUBERT SHAW, individually;<br><br>          Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

American Alternative Insurance Corporation, by and through its

COMPLAINT FOR DECLARATORY JUDGMENT - 1

undersigned counsel, files this Complaint seeking declaratory relief against the Defendants named herein that no coverage is afforded under the policy of insurance at issue, and in support thereof avers as follows:

## I. PARTIES

1. Plaintiff American Alternative Insurance Corporation ("AAIC") is a Delaware corporation that operates as an admitted insurer in all 50 states and the District of Columbia, and provides insurance coverage for various groups and commercial insureds.

2. Defendant Big Wood Canal Company ("Big Wood") is a canal company with its principal place of business in Lincoln County.

3. On or about February 17, 1906, the Idaho state engineer issued water permit No. 1817, which authorized diversion of 3,000 second feet of the waters of Big Wood and Malad rivers, with a priority of November 16, 1905.

4. On or about August 21, 1907, the Idaho Irrigation Company, Ltd., the predecessor in interest to Big Wood, contracted with the state of Idaho to build, under the Carey Act (43 USCA § 641), irrigation works for the reclamation of lands in Blaine, Gooding, and Lincoln counties.

5. In September 1908, in order to aid in the transfer of ownership and control of the irrigation system to the water users, the Big Wood River Reservoir & Canal Company, Ltd., was incorporated under the laws of Idaho, for the purpose of operating and managing the irrigation system. The name of this corporation was changed in April 1921, to the Big Wood Canal Company.

6. Following such incorporation, shares of stock were sold in the

operating company. Each share of stock evidencing a water right for one acre of land available to various persons agreeing to purchase the project lands who thereafter became stock holders.

7. Defendant Carl Pendleton, is now and, at all times relevant herein, has been a resident of Lincoln County, Idaho.

8. Defendant Mike Faulkner, is now and, at all times relevant herein, has been a resident of Gooding County, Idaho.

9. Defendant Greg Lierman, is now and, at all times relevant herein, has been a resident of Gooding County, Idaho.

10. Defendant Robin Lezamiz, is now and, at all times relevant herein, has been a resident of Lincoln County, Idaho.

11. Defendant Alton Huyser, is now and, at all times relevant herein, has been a resident of Lincoln County, Idaho.

12. Defendant Roddy L. Adams, is now and, at all times relevant herein, has been a resident of Lincoln County, Idaho.

13. Defendant Jack Loper, is now and, at all times relevant herein, has been a resident of Gooding County, Idaho.

14. Defendant Ryan Telford, is now and, at all times relevant herein, has been a resident of Lincoln County, Idaho.

15. Defendant Hubert Shaw, is now and, at all times relevant herein, has been a resident of Lincoln County, Idaho.

16. Pendleton, Faulkner, Lierman, Lezamiz, Huyser, Adams, Loper, Telford and Shaw (collectively "Directors") were at all times relevant herein individual

members of the Board of Directors of Big Wood and therefore pursuant to some provisions of the Policy eligible to be considered unnamed Insureds under the Policy issued by AAIC.

## II. JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1332 and 2201, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of costs, interest and attorneys' fees.

18. Venue is proper within the District Court of the State of Idaho under 28 U.S.C. § 1391(b) and (c) because (i) a substantial part of the events or omissions giving rise to the claim occurred in this District and (ii) the defendants are subject to personal jurisdiction in this District.

## III. THE AAIC POLICIES

19. From January 3, 2012, through January 3, 2013, Big Wood was the named insured under a package policy of insurance issued by AAIC under policy number GPPA-PF-6050014-02/000 (the "Primary Policy"). A true and correct copy of the Primary Policy is attached hereto as Exhibit A and incorporated herein by reference.

20. From January 3, 2012, through January 3, 2013, Big Wood was the named insured under a Commercial Excess Follow Form Policy issued by AAIC under policy number GPPA-XS-3050010-01/000 (the "Excess Policy"). A true and correct copy of the Excess Policy is attached hereto as Exhibit B and incorporated herein by reference.

21. The Primary Policy included, among others, General Liability

COMPLAINT FOR DECLARATORY JUDGMENT - 4

coverage (the "General Liability Coverage" or "CGL Policy"), which provides coverage for Bodily Injury and Property Damages (Coverage A) and Personal and Advertising Injury (Coverage B) and Medical Expense (Coverage C).

22. The Primary Policy also included, among others, Public Officials Management Liability coverage (the "Public Officials Coverage" or "POML Policy"), which provides coverage for Monetary Damages (Coverage A) and Defense Expense for Injunctive Relief (Coverage B).

23. The Excess Policy included Commercial Excess Follow Form coverage that applied in excess of the amount payable under the under the terms of any Underlying Insurance listed on the Excess Policy's Schedule of Underlying Insurance, which includes the Primary Policy.

24. The <u>Primary Policy General Liability</u> (the "CGL Policy") Coverage A provides, in relevant part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABLITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . .
>
> b. This insurance applies to "bodily injury" or "property damage" only if:

COMPLAINT FOR DECLARATORY JUDGMENT - 5

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" arising out of your operations that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" occurs during the policy period;

. . .

  **2.** **Exclusions Applicable to Coverage A.**

  This insurance does not apply to:

**n.** **Expected or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage' resulting from reasonable actions taken to protect persons or property.

**t.** **Pollution**
Any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however, caused. Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful or dangerous. Environment includes any air, land, structure (or the air within), watercourse or other body of water, including underground water.

**aa.** **Specific Operations**
"Bodily injury" or "property damage" arising from the ownership, operation, maintenance, entrustment to others, or use of any:
. . . .

(8) Gas or electric generation facility . . .

**SECTION V. DEFINITIONS**

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

COMPLAINT FOR DECLARATORY JUDGMENT - 6

21. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

28. "Property damage" means:

(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

25. The <u>Primary Policy Public Officials</u> (the "POML Policy") Coverage A provides, in relevant part:

**SECTION I.  COVERAGES**

**COVERAGE A. INSURING AGREEMENT – LIABILITY FOR MONETARY DAMAGES**

1. We will pay those sums that the insured become legally obligated to pay as monetary damages arising out of a "wrongful act", or an "employment practices" offense, or an offense in the "administration" of your "employee benefit plans", to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages or a "wrongful act" or an "employment practices" offense or an offense in the "administration" of your "employee benefit plans" to which this insurance does not apply. . .

2. This insurance applies to "wrongful acts" or offenses only if:

  a. The "wrongful act" or offense takes place in the "coverage territory" during the policy period; and

COMPLAINT FOR DECLARATORY JUDGMENT - 7

b.   Prior to the policy period, no insured listed in Paragraph 1. And 2.a. of Section III. WHO IS AN INSURED and no insured authorized by you to give or receive notice of a "wrongful act", offense or "claim" knew that the "wrongful act" or offense had taken place, in whole or in part. If such a listed insured knew, prior to the policy period, that the "wrongful act" or offense had taken place, then any continuation, change or resumption of such "wrongful act" or offense during or after the policy period will be deemed to have been known prior to the policy period.

**SECTION II. EXCLUSIONS**

This insurance does not apply under either **Coverage A** or **Coverage B** to:

**4.   Bodily Injury, Property Damage or Personal and Advertising Injury**
"Bodily injury", "property damage", or "personal and advertising injury" except when resulting from a covered "employment practices" offense.

**8.   Contracts**
Any amount actually or allegedly due under the terms of any contract for the purchase of goods or services or any payment or performance contract, other than an employment contract.

**9.   Contractual Liability**
Damages, loss or expense based upon, attributed to, arising out of, in consequence of, or in any way related to any contract or agreement to which the insured is a party or a third-party beneficiary, including, but not limited to, any representations made in anticipation of a contract or any interference with the performance of a contract.

**21.   Pollution**
Any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however, caused.

COMPLAINT FOR DECLARATORY JUDGMENT - 8

Pollution includes the actual, alleged, or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful or dangerous. Environment includes any air, land, structure (or the air within), watercourse or other body of water, including underground water.

**SECTION III. WHO IS AN INSURED**

1. If you are designated in the Declarations as:

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. You stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    a. Elected or appointed officials. Your elected and appointed officials, including elected and appointed officials of your operating authorities, boards, commissions, districts, or other governmental units but only for acts within the course and scope of their duties for the Insured public entity or its operating authorities, boards, commissions, districts or other governmental units.

**SECTION VII. DEFINITIONS**

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

3. "Claim" means written or oral notice, including "suit", from any party, that it is their intention to hold the insured responsible for damages arising out of a "wrongful act" or offense by the insured.

COMPLAINT FOR DECLARATORY JUDGMENT - 9

8. "Employment practices" means an actual or alleged improper employment related practice, policy, act or omission involving an actual, prospective, or former "volunteer worker" or "employee", including:

   a. Failing to hire or refusing to hire;

   b. Wrongful dismissal, discharge, or termination of employment or membership, whether actual or constructive;

   c. Wrongful deprivation or a career opportunity, or failure to promote;

   d. Wrongful discipline of "volunteer workers" or "employees";

   e. Negligent evaluation of "volunteer workers" or "employees";

   f. Retaliation against "volunteer workers" or "employees" for the exercise of any legally protected right or for engaging in any legally protected activity;

   g. Failure to adopt adequate workplace or employment-related policies and procedures;

   h. Harassment, including "sexual harassment"; or

   i. Violation of any federal, state or local laws (whether common law or statutory) concerning employment or discrimination in employment.

18. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property; and

   b. Loss of use of tangible property that is not physically injured but results from a. above.

25. "Wrongful act" means any actual or alleged error, act, omission, neglect, misfeasance, nonfeasance, or breach of duty, including violation of any civil rights law, by any insured in discharge of their duties individually or collectively that results directly but unexpectedly and unintentionally in damages to others.

26. The <u>Excess Policy</u>, insuring agreement states, in relevant part:

This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the Underlying Insurance except as otherwise provided in this policy; provided, however, that in no event will this insurance apply unless the Underlying Insurance applies or would apply but for the exhaustion of its applicable Limit of Liability.

### IV. THE UNDERLYING COMPLAINT

27. On or about April 18, 2014, several stockholders of Big Wood filed a Class Action Complaint and Demand for Jury Trial in the District Court of the Fifth Judicial District of the State of Idaho, in and for the County of Lincoln, Case No. CV 2014-75 (the "Stockholder's Lawsuit"). A true and correct copy of the Shareholder's Lawsuit is attached hereto as Exhibit C and incorporated herein by reference.

28. The Stockholder's Lawsuit alleges that Big Wood operates Magic Reservoir which stores and provides irrigation water during the growing season to its stockholders. It further alleges that in 2011, the hydroelectric generation operator at the dam, Magic Reservoir Hydroelectric, Inc., experienced a leak on a hydraulic oil line to the main water intake gate on the reservoir side of the dam. Efforts were made to encapsulate this oil leak to prevent the discharge of the oil pollution into waters of the United States.

29. The Stockholder's Lawsuit further alleges that in order to rectify this oil leak, the hydroelectric operator needed Big Wood to draw down the water level of the

COMPLAINT FOR DECLARATORY JUDGMENT - 11

reservoir. In July 2012, the Directors of Big Wood entered into a Memorandum of Agreement (attached to Exhibit C) with Magic Reservoir Hydroelectric, Inc. regarding the timing of when those repairs would be made. Big Wood voluntarily and knowingly agreed to lower the water level in the dam by October 15, 2012 and maintain it at that level until the repairs were completed or December 31, 2012, whichever came first.

30. According to the Stockholder's Lawsuit, due to irrigation concerns and forecasts for a potentially below average upcoming water season, the Directors of Big Wood sought to delay the previously agreed upon 2012 water drawn down in order to avoid discharging storage water likely to be needed for the 2013 irrigation season. Magic Reservoir Hydroelectric, Inc., sought a court order seeking to enforce the previously agreed upon timeline with Big Wood to draw down Magic Reservoir as set forth in the Memorandum of Agreement. A true and correct copy of the Petition for Writ of Mandamus or in the Alternative Motion for Specific Performance is attached hereto as Exhibit D and incorporated herein by reference.

31. The Stockholder's Lawsuit further alleges that Big Wood ultimately lowered the water levels to allow the dam repairs to take place. As a result of this draw down, the Stockholder's allege that approximately 54,000 acre feet of storage irrigation water was released from the dam and not available for irrigation use by Big Wood's stockholders. Due to below average precipitation during the winter of 2012 into 2013, insufficient water storage was accumulated to satisfy the irrigation season water needs of the stockholder farmers of Big Wood. As a result, Big Wood was unable to provide any further irrigation water to its stockholders after June 28, 2013.

32. The Stockholder's Lawsuit Complaint seeks class action status for

COMPLAINT FOR DECLARATORY JUDGMENT - 12

all Big Wood stockholders who allegedly suffered losses as a result of the loss of irrigation water after June 28, 2013.

33. The Stockholder's Lawsuit includes the following counts related to Big Wood and its Directors:

> a. Count I – Breach of Contract as against Big Wood for allegedly failing to provide the required proportionate share of water to the Plaintiffs during the 2013 growing season by virtue of drawing down the water level of Magic Reservoir.
>
> b. Count II – Negligence as against Big Wood for allegedly failing to keep the canal system supplied with water as a result of lowering the water level in the dam and by failing to impound the water flowing through the dam during the time repairs were being made.
>
> c. Count III – Breach of Fiduciary Duty as against the Directors of Big Wood for 1) making the decision to lower the water level in the dam, 2) by failing to impound the water flowing through the dam, and 3) by failing to obtain compensation from Defendant Magic Reservoir Hydroelectric Inc., as a result of the draw-down of the water level.
> (See Exhibit C.)

34. The Stockholder's Lawsuit generally alleges that, as a result of the failure to impound water and the decision to draw down the 54,000 acre feet of water from Magic Reservoir, the Plaintiff Stockholder farmers lost approximately 41 days of irrigation water. The loss of this water during a critical time in the growing season is alleged to have resulted in significant money damages to crops and lost farming yields to the underlying Plaintiff Stockholders.

35. The Stockholder's Lawsuit seeks an award of special and general damages in an amount to be determined at trial, prejudgment interest, attorney fees and court costs, and such other and further relief as the Court deems just and proper.

COMPLAINT FOR DECLARATORY JUDGMENT - 13

V.   THE COVERAGE ISSUE

A.   The CGL Policy

36. Based on the facts alleged in the Stockholder's Complaint, and the provisions of the primary Policy's General Liability Coverage, Public Officials Coverage and the Excess Policy, neither Big Wood nor its Directors are entitled to a defense or indemnification under the Primary Policy, or indemnification under the Excess Policy, in connection with the claims being made against them.

37. The allegations of the Stockholder's Complaint do not satisfy the AAIC CGL policy's definition of an "occurrence", i.e. an accident, but rather an intentional business decision to enter into a contract to discharge water and not impound additional water. As a result, there is no coverage and therefore no duty to defend the Stockholder's Lawsuit under the Primary or Excess Policies. (See Section I, Coverage A1b; Section V, Definition 21).

38. In the alternative, the AAIC CGL Policy contains a specific exclusion for "property damage" where that damage is expected or intended from the standpoint of the insured. As the loss at issue relates to intentional steps taken pursuant to a written contract to lower water levels so that an oil leak could be repaired which would necessarily and knowingly result in a loss of water for the Stockholders, this exclusion applies such that there is no coverage and therefore no duty to defend the Stockholder's Lawsuit under the Primary or Excess Policies. (See Section I, Coverage A2, Exclusion n).

39. In the alternative, the AAIC CGL Policy contains a specific exclusion for causes of action sounding in breach of contract which would preclude

COMPLAINT FOR DECLARATORY JUDGMENT - 14

coverage for Count I of the Stockholder's Complaint; (See Section I, Coverage A2, Exclusion F and Section V, Definition No. 13).

40. In the alternative, the AAIC CGL Policy also contains a broadly worded exclusion for any injury, damage, loss, legal liability arising out of or in any way related to pollution, however, caused. As the loss at issue relates to the intentional decision to lower water levels so that an oil leak could be repaired which would necessarily and knowingly result in a loss of water for the Stockholders, this exclusion applies and there is no coverage and therefore no duty to defend the Stockholder's Lawsuit under the Primary or Excess Policies. (See Section I, Coverage A2, Exclusion t).

41. In the alternative, the AAIC CGL Policy also contains a broadly worded "specific operations" exclusion for claims for "property damage" arising from the operation and maintenance of an electric generation facility. As the loss at issue relates to the intentional decision to lower water levels in the reservoir so that maintenance could be performed to repair an oil leak associated with the electric generation facility, which would necessarily and knowingly result in a loss of water for the Stockholders, this exclusion applies and there is no coverage and therefore no duty to defend the Stockholder's Lawsuit under the Primary or Excess Policies. (See Section I, Coverage A2, Exclusion aa).

42. As it relates to the categories of damages sought by the Stockholder's Lawsuit, the AAIC CGL Policy contains an express exclusion of coverage for "any award of attorney fees taxed against the insured." (See Supplementary Payments – Coverages A and B 1e).

COMPLAINT FOR DECLARATORY JUDGMENT - 15

### B. The POML Policy

43. The AAIC POML Policy contains an express exclusion for claims for "property damage" except when those claims result from a covered "employment practices" offense. Because the list of covered employment practices covered under the POML Policy does not include coverage for intentional business decisions by a board of directors which result in property damage to company stockholders, there is no coverage under the Policy nor is there a duty to defend the Stockholder's Lawsuit. (See Section I, Coverage A1; Section II, Exclusion 4; Section VII, Definition 8).

44. In the alternative, the allegations of the Stockholder's Complaint do not satisfy the POML Policy's definition of the commission of a "wrongful act", as the Complaint references an expected and intentional business decision with a known outcome regarding the loss of available water. As a result, the AAIC POML Policy does not provide coverage and therefore there is no duty to defend the Stockholder's Lawsuit. (See Section I, Coverage 2; Section VII, Definition 25).

45. In the alternative, the AAIC POML Policy contains a specific exclusion for actions sounding in breach of contract which would preclude coverage for Count I of the Stockholder's Complaint (Section II, Exclusions 8 and 9).

46. In the alternative, the AAIC POML Policy also contains a broadly worded exclusion for any injury, damage, loss, legal liability arising out of or in any way related to pollution, however, caused. As the loss at issue relates to the intentional business decision to lower water levels so that maintenance could be performed to repair an oil leak, which would necessarily and knowingly result in a loss of water for the Stockholders, this exclusion applies and there is no coverage and therefore no duty to

COMPLAINT FOR DECLARATORY JUDGMENT - 16

defend the Stockholder's Lawsuit under the Primary or Excess Policies. (See Section II, Exclusion 21).

47. In the alternative, the damages sought by the Stockholder's Lawsuit are also not covered, in part, by virtue of the AAIC CGL Policy exclusion 5, which precludes coverage for "any award of attorney fees" taxed against an insured.

### C. The Excess Policy

48. The AAIC Excess Policy expressly states that it is subject to the same policy exclusions and conditions as set forth in the Primary Policy. Because the Primary Policy does not provide coverage, the Excess Policy does not apply either.

49. In addition, the Excess Policy contains a specific policy exclusion entitled Failure To Supply Exclusion Amendment, which states that "this insurance does not apply to any liability, loss, cost or expense arising, directly or indirectly out of the failure of any insured to adequately supply . . . water . . ." (See Endorsement Form VLCW68 02/08).

### VI. COUNT ONE - DECLARATORY JUDGMENT

50. The above paragraphs are incorporated herein by reference.

51. This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 et seq., and seeks a determination by this Court that AAIC does not have a duty under any part of the Primary Policy to defend and/or indemnify (either in whole or in part), or under any part of the Excess Policy to indemnify (either in whole or in part), Big Wood or its Directors in connection with the claims set forth in the Stockholder's Lawsuit.

52. On June 13, 2014, AAIC issued a reservation of rights letter to Big

Wood and its Directors in connection with the claims being made against them in the Stockholder's Lawsuit. A true and correct copy of this letter is attached hereto as Exhibit E and incorporated herein by reference.

53. On June 17, 2014, counsel for AAIC received a letter from counsel for Big Wood in which they disagree with the reservation of rights and state their intent to "vigorously defend any declaratory judgment action." A true and correct copy of this letter is attached hereto as Exhibit F. Further communications between the parties have been unable to resolve this dispute.

54. An actual and immediate controversy exists between the parties hereto concerning the coverage afforded under the Primary and Excess policies, as Big Wood and its Directors have sought coverage from AAIC in connection with the claims being made against them in the Stockholder's Lawsuit, and AAIC has undertaken a defense of the Stockholder's Lawsuit subject to a reservation of rights pending resolution of this declaratory judgment action.

55. As a result of the Defendants' demand under the terms of the policies attached hereto, notwithstanding that such a demand and any claim associated therewith is excluded from coverage, Plaintiff has sustained actual prejudice and seeks this Court's declaratory judgment that no coverage is afforded under the terms of the Primary and Excess Policies. Until such time as Plaintiff is able to have its rights and responsibilities under the policies construed by this Court, Plaintiff will suffer uncertainty and significant financial losses with respect to its responsibilities and obligations under the terms of said policies.

56. In light of Big Wood and its Directors' efforts to obtain coverage

under the Primary and Excess policies, and AAIC's belief that no such coverage exists, litigation appears imminent and inevitable. As such, the dispute between the parties is an actual, existing and bona fide controversy that is ripe for judicial determination.

57. Because the declaration sought by AAIC - that it has no legal or equitable obligation under the Primary Policy to defend or indemnify (either in whole or in part), under the Excess Policy to indemnify (either in whole or in part), Big Wood or its Directors in connection with the claims raised in the Stockholder's Lawsuit - will resolve or assist the parties in resolving this controversy, a declaratory judgment is an appropriate remedy under the circumstances.

58. AAIC's interest in this controversy is direct, substantial and present.

WHEREFORE, American Alternative Insurance Corporation, respectfully requests this Court render a judgment in its favor and against the defendants named herein, declaring that:

1. AAIC has no duty under the Primary Policy to defend or indemnify Defendants Big Wood or its Directors (either in whole or in part) in connection with the claims being made against them in the Stockholder's Lawsuit; and

2. AAIC has no duty under the Excess Policy to defend or indemnify Defendants Big Wood or its Directors (either in whole or in part) in connection with the claims being made against them in the Stockholder's Lawsuit; and

3. For costs and attorney fees, including those available in the event the case is frivolously defended as set forth in Idaho Code §§12-120 and 12-123.

4. Any and all such other and further relief as the Court may deem proper and appropriate in the circumstances.

**JURY DEMAND**

The Plaintiff hereby demands a trial by jury of all issues so triable.

DATED this 29th day of July, 2014.

                                           QUANE JONES McCOLL, PLLC


                                           By /s/ Terrence S. Jones
                                              Terrence S. Jones, Of the Firm
                                              Attorneys for Plaintiff American
                                              Alternative Insurance Corporation